IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY | : | CIVIL ACTION |
| v. | : | |
| LIBERTY MUTUAL INSURANCE COMPANY | : | NO. 10-1078 |

**MEMORANDUM**

**Padova, J.**                                                                       November 23, 2010

Essex Insurance Company ("Essex"), as the assignee of Skirmish, U.S.A., Inc. ("Skirmish"), brings this action against Liberty Mutual Insurance Company ("Liberty Mutual"), seeking to recover one-half of the amount that Essex paid for the defense and indemnification of Skirmish in connection with a lawsuit brought by Jorge Martinez captioned Martinez v. Skirmish U.S.A., Inc., Civ. A. No. 07-5003 (E.D. Pa.) (the "Martinez litigation"). Liberty Mutual has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the Motion is granted.

**I.    BACKGROUND**

The Complaint alleges the following facts. Essex issued commercial general liability policy no. 3CQ2257 (the "Essex Policy"), to Skirmish, a paintball recreation facility located in Jim Thorpe, Pennsylvania, for the period from March 4, 2005 through March 4, 2006. (Compl. ¶¶ 6-7, Ex. A.) Liberty Mutual issued commercial general liability policy no. GLTO-472960-007 (the "Liberty Policy"), to Vision 2 International Inc. ("Vision 2"), a manufacturer of paintball goggles, for the period from July 17, 2007 though July 17, 2008, with a Retroactive Date of September 1, 2003. (Id. ¶¶ 8, 11, Ex. B.) The Liberty Policy covers "all damages the 'Insured' becomes legally liable to pay by reason of liability imposed by law or assumed by the 'Insured' . . . for: A. 'bodily injury' or 'property damage' covered by this Policy that takes place during the 'policy period' and is caused

by an occurrence . . . ." (Liberty Policy Section I.) The Liberty Policy further provides that its coverage is primary insurance and, if its insured has other primary insurance applicable to a loss that provides for contribution by equal shares, Liberty Mutual will also contribute in equal shares. (Id. Section VIII. 12.) The Essex Policy also provides for contribution by equal shares if its insured's other insurance permits contribution by equal shares. (Essex Policy Section IV. 4. c.)

Jorge Martinez visited Skirmish to engage in paintball games on March 19, 2006. (Compl. ¶ 10.) He rented paintball equipment from Skirmish, including VForce Armor Rental Field Black Goggles ("VForce Goggles") manufactured by Vision 2 and sold to Skirmish by ProCaps, LP and by ProCaps Direct USA (collectively "ProCaps"). (Id. ¶ 11.) He was struck in his right eye by a paintball during a paintball game after his VForce Goggles slipped or moved position, exposing his right eye. (Id. ¶ 13.) He suffered permanent blindness in his right eye as a result. (Id. ¶ 14.)

Martinez filed suit against Skirmish on November 28, 2007. (Id. ¶ 15.) Skirmish subsequently filed Third Party Complaints against Tippmann Sports LLC ("Tippman") and ProCaps, alleging negligence in the design and manufacture of paintball guns, paintballs, and goggles. (Id. ¶ 17.) On January 9, 2009, Martinez filed direct claims against ProCaps, alleging the same facts as alleged in Skirmish's Third Party Complaints. (Id. ¶ 18.) On June 15, 2009, we denied Skirmish's Motion for Summary Judgment on Martinez's claims against Skirmish, insofar as it sought judgment in its favor on Martinez's claims against Skirmish for gross negligence, strict liability, and breach of warranty relating to the VForce Goggles. (Id. ¶ 19.) In doing so, we concluded that "the defects in design of the [VForce Goggles] outweigh its social utility and, accordingly, that the [VForce Goggles] Skirmish rented to Martinez on March 19, 2006 were unreasonably dangerous." (Id. ¶ 20.) On May 21, 2009, we granted Tippman's Motion for Summary Judgment, dismissing all claims

against Tippman. (Id. ¶ 21.) On June 1, 2009, we granted ProCaps' Motion for Summary Judgment, dismissing all claims against ProCaps. (Id. ¶ 22.)

On August 19, 2009, Essex tendered defense and indemnification of the Martinez litigation to Liberty Mutual pursuant to the Liberty Policy, on the ground that Skirmish was a vendor, as that word is defined in the Liberty Policy, of the defective VForce Goggles that Martinez claimed caused his injuries. (Id. ¶ 24.) On August 27, 2009, Essex notified Liberty Mutual of a September 1, 2009 settlement conference in the Martinez litigation, and invited Liberty Mutual to attend and participate in the evaluation of Martinez's claim. (Id. ¶ 25.) On August 31, 2009, Liberty International Underwriters, on behalf of Liberty Mutual, acknowledged receipt of Essex's tender of defense and indemnification; however, it did not accept the tender and it declined to participate in claim evaluation or the settlement conference. (Id. ¶ 26.) The Martinez litigation was settled on September 1, 2009 through payment by Essex, on behalf of Skirmish, of $850,000 in exchange for delivery by Martinez of a Release and Settlement Agreement (the "Martinez settlement"). (Id. ¶ 27.) The Release did not release any claims against Vision 2. (Id. ¶ 28.) On October 23, 2009, Skirmish assigned to Essex its rights to recover from Liberty Mutual, pursuant to the Liberty Policy, any payments Essex made in the defense and settlement of the Martinez litigation and any fees and costs associated therewith. (Id. ¶ 29, Ex. C.)

The Complaint asserts one claim of breach of contract against Liberty Mutual. In support of this claim, the Complaint alleges that: (1) Skirmish is an Insured under the terms and conditions of the Liberty Policy; (2) the VForce Goggles Skirmish rented to Martinez on May 19, 2006 were an "Insured product" under the terms and conditions of the Liberty Policy; (3) the accident and resulting injury to Martinez on May 19, 2006 constitute an "Occurrence" as defined by the Liberty

3

Policy; and (4) under the terms of the Liberty Policy, Liberty Mutual must contribute, by equal shares, to the amount paid for the defense and indemnification of Skirmish in connection with Martinez's injury. (Id. ¶¶ 36-43.) Essex paid $244,171.81 to defend of Skirmish in the Martinez litigation. (Id. ¶ 50.) Essex paid $850,000.00 on behalf of Skirmish to settle the Martinez litigation. (Id. ¶ 51.) Essex seeks a total of $547,085.90 from Liberty Mutual. (Id. ¶ 54.)

Liberty Mutual has moved to dismiss the Complaint on three grounds. First, it argues that that the Martinez occurrence and claim are not covered by the Liberty Policy because they were not timely reported to Liberty Mutual as required by the Liberty Policy. Next, it argues that it has no obligation to make any payment with respect to the Martinez litigation under the Liberty Policy because the Martinez litigation was settled without its consent. Finally, it argues that Skirmish does not qualify as an Insured under the Liberty Policy.

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed.

R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

## III. DISCUSSION

The Complaint asserts one claim for breach of contract against Liberty Mutual for failure to pay an equal share of the Martinez settlement and Skirmish's defense costs in the Martinez litigation. "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). In order to determine whether Liberty Mutual has a contractual duty to pay an equal share of the Martinez settlement and Skirmish's defense costs, we must analyze the relevant provisions of the Liberty Policy. The Pennsylvania Supreme Court has summarized the principles to be used in interpreting the provisions of an insurance policy as follows:

> [T]he task of interpreting [an insurance] contract is generally

> performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (alterations in original) (quoting Gene & Harvey Builders v. Pa. Mfrs. Ass'n, 517 A.2d 910, 913 (Pa. 1986)).

### A. Timely Notice

Liberty Mutual argues that it had no obligation to make any payment to Essex because it did not receive timely notice of Martinez's injury (the "Martinez occurrence") or his lawsuit (the "Martinez claim") as the Liberty Policy requires. Section VIII. 9. of the Liberty Policy lists the duties of the insured in the event of an occurrence, claim or suit. It specifically provides that "[i]n the event of an 'occurrence' which may result in a claim under this Policy, the 'Insured' shall notify the Insurer thereof as soon as possible . . . ." (Liberty Policy Section VIII. 9.(a).) This section also provides that "[i]f a claim is made or 'suit' is brought against the 'Insured', the 'Insured' shall immediately forward to the Insurer every demand, notice, summons or other process received by the 'Insured' or the 'Insured's' representative." (Id. Section VIII. 9.(b).) In addition, the Claims Made Endorsement to the Liberty Policy provides an extended reporting period for claims for bodily injury, but only if they arise out of an "occurrence" that has been "reported to the Insurer in writing, not later than 60 days after the end of the 'policy period,' and in accordance with Paragraph 9,(a) of the Section VIII - Duties in the Event of Occurrence, Claim or Suit Condition . . . ." (Id. Endorsement No. 1, Amendment B, Section IX. 3.a.). Moreover, the Claims Made Endorsement entirely precludes coverage for claims not reported to Liberty Mutual within 60 days of the end of the policy period if

6

the occurrence had not been previously reported to Liberty Mutual. (Id. Endorsement No. 1, Amendment B, Section IX. 3.c.). Liberty Mutual argues that the Complaint should be dismissed because Skirmish failed to notify it of the Martinez occurrence or claim as soon as possible, and because it was not notified by either Essex or Skirmish within 60 days after the end of the policy period, both of which are separate and independent conditions precedent to coverage.

The Complaint alleges that Martinez was injured at Skirmish on March 19, 2006. (Compl. ¶¶ 10-14.) The Complaint does not allege that Skirmish, or any other Insured under the Liberty Policy, ever gave notice to Liberty Mutual of the Martinez occurrence or claim. Essex, which is alleged to stand in the shoes of Skirmish, is not alleged to have given notice to Liberty Mutual of the Martinez occurrence or claim before August 19, 2009. (Id. ¶ 24.) The end of the policy period for the Liberty Policy was July 17, 2008. (Liberty Policy, Claims Made Coverage Declarations, Item 3.)

Essex nevertheless argues that the public record, which can be considered in connection with a Motion to Dismiss, demonstrates that the notice requirements of the Liberty Policy were satisfied by another party. Essex contends that Liberty Mutual was given timely indirect notice of the Martinez occurrence and claim by ProCaps, which it claims was insured by Liberty Mutual, though not under Vision 2's general liability policy no. GLTO-472960-007. Specifically, Essex relies on documents filed in the Martinez litigation, which show that ProCaps filed a third-party complaint against Vision 2.[1] Although neither the Complaint filed in this action nor any of the Martinez

---

[1] We may consider "public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies)" in deciding a motion pursuant to Rule 12(b)(6). Miller v. Cadmus Commc'ns, Civ. A. No. 09-2869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994)). Essex relies on the following documents which were filed in the Martinez

litigation documents that Essex relies on actually state that ProCaps was insured by Liberty Mutual, we will assume *arguendo* that ProCaps was insured by Liberty Mutual in connection with the Martinez litigation.

Essex's indirect notice argument relies on the Pennsylvania Superior Court's opinion in Philadelphia Electric Company v. Aetna Casualty & Surety Co., 484 A.2d 768 (Pa. Super. Ct. 1984) (the "PECO action"). The issue before the Superior Court in that case was whether "Philadelphia Electric Company's (PECO's) insurance claim was barred by its failure to properly notify its insurer, Aetna Casualty & Surety Company (Aetna), of the accident within a reasonable time." Id. at 769 (footnote omitted). The Superior Court determined that PECO's claim was not barred because Aetna had received notice of the accident shortly after it occurred, albeit not from PECO. (Id.)

The plaintiff in the PECO action was Herman Love, who was employed by a contractor for the Pennsylvania Department of Transportation and who was injured when working on a project involving PECO facilities. Id. at 769. The contractor, McCloskey & Company ("McCloskey"), had purchased an insurance policy from Aetna in connection with that project, naming itself and PECO as insureds. Id. Love filed a worker's compensation claim with Aetna, which was also McCloskey's worker's compensation carrier. Id. at 769-70. Love also filed a personal injury suit against PECO. Id. at 770. PECO did not know about McCloskey's Aetna policy and, therefore, did not notify Aetna of Love's suit. Id. However, Aetna joined McCloskey as a third-party defendant to Love's suit and

---

litigation: "Third- Party Complaint of Skirmish, U.S.A., Inc. vs. ProCaps Direct USA Pursuant to Federal Rule of Civil Procedure 14" (Docket No. 13); ProCaps' "Response to Motion of Defendant Skirmish, U.S.A., Inc. For Leave to File a Third-Party Complaint Pursuant to Federal Rule of Civil Procedure 14(a)" (Docket No. 32); the October 31, 2008 Order allowing ProCaps to file a third-party complaint against Vision 2 (Docket No. 34); and the Third-Party Complaint filed by ProCaps against Vision 2 on January 8, 2009 (Docket No. 58).

McCloskey notified Aetna of the suit. Id.

PECO learned about McCloskey's Aetna policy shortly before Love's personal injury suit went to trial and it served written notice on Aetna, seeking a defense in that case. Id. Aetna refused to provide PECO with a defense, stating that it had not received timely written notice of Love's accident. Id. The case went to trial and Love was awarded a judgment against PECO. Id. PECO then sued Aetna for breach of contract and sought indemnity with respect to Love's judgment. Id. Since the Aetna policy did not require the insured itself to give notice, but permitted notice to be made by another party on behalf of the insured, the Superior Court determined that the requirement of notice could be satisfied by a source other than the insured "as long as the [insurer] is reasonably alerted, either directly or indirectly, of the accident prior to the pendency of the suit." Id. at 771 (citation omitted). The Superior Court explained its reasoning as follows:

> Turning our attention to the pertinent notice provision in the policy, we see that it was rather ambiguous on the issue of whom was responsible for notifying Aetna of an accident. In this respect, the policy merely stated that ". . . written notice shall be given by *or on behalf of the insured* . . . as soon as practicable." (Emphasis added.) We believe the parties intended the phrase "or on behalf of the insured" to mean that notice of the accident from "any reliable source" is all that was required to trigger Aetna's responsibility under the policy.

Id. (alterations in original, footnote omitted). The Superior Count then determined that Love's worker's compensation claim did not constitute notice of the accident:

> the record reveals that Aetna first became aware of the accident as early as May of 1966 when it represented McCloskey in the worker's compensation claim. This claim, which arose out of the same mishap as the present controversy, would seem to be sufficient to notify Aetna of the accident and its impending duty to PECO. However, as the lower court[']s opinion correctly points out, the investigation conducted by Aetna pursuant to that claim was materially different

> from the type of investigation Aetna would have conducted in preparation for this personal liability defense. Therefore, we cannot say that this worker's compensation claim, in and of itself, alerted Aetna of its potential responsibility.

Id. at 771-72. The Superior Court found that McCloskey's notice to Aetna of Love's lawsuit, in connection with the insurance policy that covered both McCloskey and PECO, constituted notice from a responsible party:

> A further examination of the record reveals, however, that in November of 1966, Aetna was again alerted to the circumstances surrounding Mr. Love's accident when it was joined by McCloskey to defend a third-party indemnity claim by PECO, in the personal injury suit instituted by Mr. Love. In defending McCloskey in this action, Aetna was confronted with the same policy under which PECO had also been designated as one of the named beneficiaries. Furthermore, the notice McCloskey provided Aetna included a rather detailed explanation of PECO's involvement in the matter.
>
> We are convinced that McCloskey's notice of the accident, in combination with the notice Aetna received under the worker's compensation claim, were sufficient to notify Aetna of its responsibility to defend PECO in the personal injury action.

Id. at 772 (footnotes omitted).

The Superior Court's reasoning in the PECO action is not, however, applicable to the instant case. Unlike the insurance policy in the PECO action, the clear and unambiguous language of the Liberty Policy requires that the Insured notify Liberty Mutual of claims and occurrences, and does not permit notice to be made by another party on behalf of the Insured. (Liberty Policy, Section VIII.9.(a) and Endorsement No. I, Amendment B., Section IX. 3.) Furthermore, "McCloskey gave notice to Aetna with regard to the *same policy* under which PECO was a named insured, and even explained PECO's role in the matter." Bolden v. Niagara Fire Ins. Co., 814 F. Supp. 444, 449 (E.D. Pa. 1993). In this case, Essex relies only on the notice that ProCaps purportedly gave to Liberty

10

Mutual under its own insurance policy, not under the insurance policy Liberty Mutual issued to Vision 2. Since Essex does not allege that notice of any claim or occurrence arising from Martinez's injury was given to Liberty Mutual by any entity that was an Insured under Vision 2's Liberty Policy within 60 days after the end of the policy period as required by the Claims Made Endorsement (Liberty Policy Endorsement No. 1, Amendment B, Section IX. 3.c.), the Complaint does not set forth a plausible claim that the Liberty Policy was ever "triggered."[2] Id. at 450.

Essex has not, and apparently cannot, allege that Liberty Mutual was notified of the Martinez occurrence or claim by an Insured under the Liberty Policy within 60 days of the end of the policy period as required by the clear and unambiguous language of the Claims Made Endorsement. (See Libery Policy Endorsement No. 1, Amendment B, Section IX. 3.a., c.) We conclude, therefore, that

---

[2] Essex further argues that Liberty Mutual may not deny coverage due to late notice of a claim or occurrence unless it suffers prejudice therefrom. Essex relies on Section VIII. 9.(e) of the Liberty Policy, which states that "[t]he Insurer is entitled to deny coverage for any claim in the event that the 'Insured' does not fulfill the duties set out in (a) to (d) above and the Insurer thereby sustains prejudice." (Liberty Policy, Section VIII. 9.(e).) Subsections 9.(a) - (d) require the Insured to: give notice of an occurrence to Liberty Mutual as soon as possible (id. Section VIII. 9.(a)); forward process to Liberty Mutual if a claim or lawsuit is brought against the Insured (id. Section VIII. 9.(b)); cooperate with the Insurer (id. Section VIII. 9.(c)); and refrain from admitting liability or voluntarily making any payment (id. Section VIII. 9.(d)). However, we base our conclusion on Essex's failure to comply with Extended Reporting Periods provisions of the Claims Made Endorsement of the Liberty Policy, not upon Essex's failure to give notice as soon as possible as required by Section VIII. 9.(a). The clear and unambiguous language of the Extended Reporting Periods section of the Claims Made Endorsement requires that claims against the Insured for which no notice was given to Liberty Mutual during the policy period be reported to Liberty Mutual within 60 days of the end of the policy period. (Id. Endorsement No. 1, Amendment B, Section IX. 3.c.) This section of the Claims Made Endorsement does not include a requirement that Liberty Mutual suffer prejudice as a result of the late notice. Consequently, Liberty Mutual may deny coverage based upon the late notice of the Martinez claim or occurrence whether or not it suffered prejudice therefrom. In addition, "the Pennsylvania Supreme Court has recently confirmed that an insurance company need not prove prejudice when denying coverage for lack of notice in connection with a claims-made policy." 4th Street Investments, LLC v. Dowdell, 340 F. App'x 99, 101 n.1 (3d Cir. 2009) (citing ACE Am. Ins. Co. v. Underwriters at Lloyds and Cos., 971 A.2d 1121 (Pa. 2009)).

11

the public record contains no facts, and the Complaint alleges no facts, that would support a claim that Liberty Mutual has a duty under the Liberty Policy to pay an equal share of the payments made by Essex in connection with the Martinez litigation. Consequently, the Complaint fails to state a claim for breach of contract against Liberty Mutual upon which relief may be granted with respect to payment of an equal share of the settlement and defense costs paid by Essex on behalf of Skirmish in connection with the Martinez litigation.

      B.      Failure to Obtain Liberty Mutual's Consent to Settle the Martinez Litigation

Liberty Mutual argues that it had no obligation to pay an equal share of the Martinez settlement because it did not consent to that settlement. The Liberty Policy provides that "[t]he Insurer has no obligation under this Policy with respect to any claim or 'suit' settled without its consent." (Liberty Policy Section II.) In addition, the Liberty Policy requires "that the 'Insured' not make any admission of liability, nor, except at its own cost, voluntarily make any payment, assume any obligation or incur any expenses other than for immediate medical relief to others as is imperative at the time of an 'occurrence.'" (Id. Section VIII. 9.(d).) The Liberty Policy further provides that, "[t]he Insurer is entitled to deny coverage for any claim in the event that the 'Insured' does not fulfill" the requirements that it not make any admission of liability or voluntarily make any payment, and the Insurer sustains prejudice as a result. (Id. Section VIII. 9.(e).)

The Complaint alleges that Essex notified Liberty Mutual of the Settlement Conference in the Martinez litigation on August 27, 2009 (Compl. ¶ 25), which was a Thursday.[3] The following Monday, August 31, 2009, Liberty International Underwriters, on behalf of Liberty Mutual, declined

---

[3]The Court had sent Notice of the Settlement Conference to Skirmish on August 18, 2009. Martinez v. Skirmish U.S.A., Inc., Civ. A. No. 07-5003 (E.D. Pa. Aug. 8, 2009) (Notice).

to participate in the Settlement Conference. (Id. ¶ 26.) The Settlement Conference, which resolved the Martinez litigation through the payment by Essex of $850,000 to Martinez, took place on September 1, 2009. (Compl. ¶ 27.) The Complaint does not allege that Essex made any other attempt to consult with Liberty Mutual regarding settlement either prior to or during the Settlement Conference.

Essex contends that Liberty Mutual cannot rely on its own failure to participate in the Settlement Conference to avoid paying its an equal share of the settlement and defense costs. Essex, however, points to no provision of the Liberty Policy or to any legal authority to support its argument. Instead, Essex essentially argues that Liberty Mutual's conduct operates as an equitable bar to enforcement of Sections II and VIII. 9.(b) of the Liberty Policy. We reject this argument. Where, as here, the terms of an insurance policy are clear and unambiguous, we may not consider the equities of enforcing those terms. See West v. Lincoln Ben. Life Co., 509 F.3d 160, 168-69 (3d Cir. 2007) ("In the absence of an affirmative misrepresentation by the insurer or its agent about the contents of the policy, the plain and unambiguous terms of a policy demonstrate the parties' intent and they control the rights and obligations of the insurer and the insured. When a provision of the policy is clear and unambiguous, it must be enforced." (citing Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006); Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999); and Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 517 A.2d 910, 913 (Pa. 1986))).

Since the Complaint does not allege that Essex obtained Liberty Mutual's consent to the settlement it reached with Martinez prior to or during the Settlement Conference, as required by the clear and unambiguous language of Section II of the Liberty Policy, we conclude that Liberty Mutual

had no duty under the Liberty Policy to pay an equal share of the Martinez settlement. Since Liberty Mutual's failure to pay an equal share of the Martinez settlement did not breach any duty imposed by the Liberty Policy, we further conclude that the Complaint fails to state a claim for breach of contract against Liberty Mutual upon which relief may be granted with respect to Liberty Mutual's failure to pay an equal share of the Martinez settlement.

IV.   CONCLUSION

For the reasons stated above, we conclude that the Complaint fails to state a claim against Liberty Mutual upon which relief may be granted.[4] Liberty Mutual's Motion to Dismiss is, therefore, granted.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.

---

[4] Since we have determined that Liberty Mutual had no obligation to pay an equal share of the settlement or defense costs incurred by Skirmish in connection with the Martinez litigation because Essex failed to provide timely notice to Liberty Mutual of the Martinez occurrence and claim as required by the Claims Made Endorsement to the Liberty Policy, and because it failed to obtain Liberty Mutual's consent to the Martinez settlement as required by Section II of the Liberty Policy, we need not address Liberty Mutual's argument that Skirmish is not an Insured as that term is defined by the Liberty Policy.